# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| RICHARD ABEL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:20-cv-01198-AGF |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This action is before this Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff Richard Abel was not disabled and thus not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 and supplemental security income (SSI) under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f.  For the reasons set forth below, the decision of the Commissioner will be affirmed.

## BACKGROUND

The Court adopts the statement of facts set forth in Plaintiff's Statement of Uncontroverted Facts (Doc. 22-1) and Defendant's Response thereto (Doc. 29-1). Together, these statements provide a fair description of the record before the Court. Specific facts will be discussed as needed to address the parties' arguments.

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, she is substituted as the Defendant in this suit.

1

Plaintiff was born on August 14, 1970, completed high school in 1990, and worked as a pipefitter and welder from 1994 to 2018.  Tr. 278.  He filed an application for disability benefits on May 1, 2018, and an application for SSI on September 6, 2018, alleging a disability beginning May 1, 2018, due to cardiomyopathy, asthma, and anxiety. Tr. 277.  After his application was denied at the administrative level, he requested a hearing before an Administrative Law Judge (ALJ).  An ALJ held a hearing on August 26, 2019, and heard testimony from Plaintiff, who was represented by counsel, and from a vocational expert (VE).  On September 5, 2019, the ALJ issued a decision finding that Plaintiff had the residual functional capacity (RFC) to perform a full range of sedentary work with the following limitations:

> [He can] lift and carry 5 pounds frequently and 10 pounds occasionally. The claimant can sit for up to 6 hours and stand and/or walk for up to 2 hours in an 8-hour workday.  He can never climb ladders, ropes, or scaffolds; kneel; or crawl.  He can occasionally stoop, crouch, and climb ramps and stairs. The claimant should avoid extreme heat, excessive vibrations, and occupations that are near electrical fields or any other environment that could interfere with the operation of his pacemaker.  He should avoid operational control of moving machinery, unprotected heights, and hazardous moving machinery.

Tr. 114.

The ALJ next found that Plaintiff could perform certain sedentary unskilled jobs listed in the Dictionary of Occupational Titles (DOT) (e.g., document specialist, optical goods final assembler, and printed circuit board screener), which the VE testified that a hypothetical person with Plaintiff's RFC and vocational factors (age, education, work experience) could perform and that were available in significant numbers in the national economy.  Tr. 118.  Accordingly, the ALJ found that Plaintiff was not disabled under the

Act.  On July 13, 2020, the Appeals Council denied Plaintiff's request for review. Plaintiff has thus exhausted his administrative remedies, and the ALJ's decision is the final decision of the Commissioner before the Court for review.  Plaintiff argues that the ALJ overlooked or improperly discounted evidence supporting findings of more severe impairments and limitations.

**The ALJ's Decision (Tr. 109-119)**

The ALJ found that Plaintiff had severe physical impairments of cardiomyopathy with cardiac resynchronization cardioverter defibrillator implant, congestive heart failure, asthma with chronic obstructive pulmonary disease (COPD), and hypertension.  The ALJ also noted that Plaintiff claimed a disability based on hand limitations.  However, the ALJ found that the evidence did not show a medically determined hand impairment because his function tests were normal and the record contained no diagnosis of a hand condition.[2]

With respect to mental impairments, the ALJ noted Plaintiff's history of anxiety disorder but found that it caused no more than a minimal limitation on Plaintiff's ability to work, and thus was non-severe, in that the circumstances causing his symptoms (related to family and financial stress) had been resolved.  Mental impairments are not deemed disabling unless functional limitations known as "Paragraph B criteria" are present, meaning a claimant has one extreme or two marked functional limitations in his ability to: (1) understand, remember, or apply information; (2) interact with others; (3)

---

2   The ALJ also noted that Plaintiff had mild obstructive sleep apnea that did not affect his ability to work.  Plaintiff does not challenge the ALJ's finding in this regard.

concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(3). In applying these criteria, and citing the opinion of Dr. Barbara Markway, Ph.D., the ALJ found that Plaintiff had no limitations in any of the four categories. As such, the ALJ found that the paragraph B criteria were not satisfied. Tr. 112-113. Plaintiff does not challenge the decision with respect to mental impairments.

Next, the ALJ found that Plaintiff's respiratory and cardiovascular impairments did not meet the severity of impairments listed in the regulations. The ALJ noted that Plaintiff's asthma was responsive to conservative treatment and that his heart conditions had improved with the implantation of a defibrillator and pacemaker. Tr. 113.

In determining Plaintiff's RFC and limitations, the ALJ discussed the following evidence. Plaintiff reported that he experiences fatigue, shortness of breath, numbness in his hands, and difficulty lifting more than 10 pounds, climbing stairs, and using heavy machinery. He said that he experiences chest pains, nausea, anxiety, and depression, and his medications make him dizzy. He said that his fatigue causes him to stay in bed several days per month. He can walk a city block but gets breathless walking his dogs. He has trouble in the heat and falls asleep when seated too long. Tr. 114.

Plaintiff received a pacemaker in May 2017. It functioned well for several months but then his symptoms returned (i.e., fatigue, dizziness, chest pains, breathlessness). He stopped working and received a cardioverter defibrillator on May 8, 2018. He continued to experience symptoms and was seen by a pulmonologist in October 2018. Tr. 115.

The ALJ found that, while Plaintiff's impairments could reasonably be expected to

cause his symptoms, his statements concerning the intensity, persistence, and limiting effects of his symptoms were not consistent with the medical evidence and evidence of his improvements and activities.  Tr. 115.  The ALJ noted that Plaintiff's conditions improved after implantation of the defibrillator.  His 2019 echocardiogram showed improved left ventricular ejection fraction of 56%.  His shortness of breath and fatigue were occurring after moderate to heavy exercise.  Tr. 482.  By June 2019, his doctor considered his condition largely asymptomatic.  Tr. 485.  Plaintiff's respiratory condition had not been treated before he saw a pulmonologist in October 2018, after which his asthma responded to medication and improved.  Tr. 549.

The ALJ further found that Plaintiff's daily activities were inconsistent with the alleged severity of his symptoms.  Tr. 115.  Plaintiff testified that he does some of the housework, walks the dogs, and cuts the grass using a riding mower.  In April 2019, Plaintiff asked his doctor about starting to exercise, and the doctor encouraged him to begin a structured exercise program, starting slowly and gradually increasing intensity.  Tr. 477, 479.

Next, the ALJ discussed the medical opinions in the record.  State agency psychologist Barbara Markway, Ph.D., found that Plaintiff had no limitations in any of the four Paragraph B criteria.  Tr. 158.  The ALJ found this opinion persuasive and consistent with the record in that Plaintiff had no history of mental health treatment and his anxiety was related to situational stress.  State agency physician Paul Spence, M.D., found that Plaintiff could perform a limited range of sedentary work.  Tr. 159-163.  The ALJ found this opinion persuasive and consistent with the evidence that Plaintiff's heart

5

condition had improved with the implantation of devices and was "largely asymptomatic" such that he could resume exercise. Tr. 477, 479. Cardiac specialists Shane LaRue, M.D., and Kevin Li, M.D., of Washington University Physicians, noted in July 2018 that Plaintiff could no longer work as a welder due to his heart condition and pacemaker. Tr. 456, 459. The ALJ found this opinion persuasive.[3]

Plaintiff submitted a cardiac questionnaire completed by a nurse practitioner, Erin Pinkerton, A.C.N.P., of Washington University Physicians, who examined Plaintiff in August 2019. She indicated that Plaintiff was seen there for 15-60 minutes every six months from 2017 to the time of her opinion.[4] She opined that Plaintiff would require 2-3 unscheduled breaks per day, would need to change positions at will, and would miss workdays unpredictably. Tr. 116, 563-64. The ALJ found this opinion insufficiently specific and thus unpersuasive. The ALJ reasoned that Nurse Pinkerton failed to indicate (1) the length or timing of breaks and thus whether normal allotted breaks would suffice, (2) the number of absences predicted per month, and (3) the reasons why Plaintiff would need to change positions at will. Tr. 116. Additionally, the ALJ found that Nurse Pinkerton's reference to hand numbness was inconsistent with the record, which did not evidence a diagnosed hand impairment.[5] Nurse Pinkerton also noted that Plaintiff had

---

[3]   This evidence consists of treatment notes and not a formal medical source statement.

[4]   The record reflects that Plaintiff's visits were somewhat more frequent than every six months, and with a variety of providers. Tr. 453-485. The first treatment notes authored by Nurse Pinkerton are dated August 2019, concurrent with this questionnaire.

[5]   Dr. Li noted Plaintiff's complaint of hand numbness in July 2018. Tr. 71. The treatment notes from this visit reflect that Plaintiff complained of bilateral hand numbness occurring in the mornings, breathlessness walking short distances, and chest discomfort with exertion. Tr. 454. Plaintiff reported significant stress from unemployment and denial of disability benefits.

passed out once for unknown reasons, but the ALJ noted that the record did not indicate ongoing syncopal episodes. Finally, the ALJ found the opinion inconsistent with evidence of improvements in Plaintiff's heart condition and Plaintiff's daily activities. Tr. 117.

Based on the foregoing, the ALJ concluded that the evidence supported an RFC with the exertional limitations described above. Next, she found that Plaintiff could perform certain unskilled jobs listed in the DOT (e.g., document specialist, optical goods final assembler, and printed circuit board screener), which the VE had stated that a hypothetical person with Plaintiff's RFC and vocational factors (age, education, work experience) could perform and that were available in significant numbers in the national economy. Accordingly, the ALJ found that Plaintiff was not disabled under the Act.

Upon review before the Appeals Council, Plaintiff submitted additional medical records reflecting treatment from September 2018 to May 2020. Tr. 14-105. The Council declined to add exhibits from September 2018 to August 2019 because the evidence did not show a reasonable probability that it would change the decision. Tr. 2 With respect to records from October 2019 to May 2020, the Council noted that the ALJ decided Plaintiff's case through September 5, 2019, so this later evidence did not relate to the period of alleged disability at issue. Tr. 2. The Council advised Plaintiff that, in

---

Tr. 454. Dr. Li speculated that some of Plaintiff's symptoms were exacerbated by his anxiety. Tr. 456. Plaintiff's subsequent treatment notes (dated August 2018, October 2018, April 2019, and June 2019) do not document hand numbness. *Id.* Nurse Pinkerton noted this complaint when she first examined Plaintiff in August 2019 and referred him to neurology, though this record appears only in the supplemental record before the Appeals Council. Tr. 75. While outside the date relevant to the ALJ's decision, Plaintiff reported at his initial neurology consult in October 2019 that his numbness "goes away quickly when he wakes." Tr. 82.

7

order to be considered disabled after September 5, 2019, he would have to file a new claim.

In his brief before this Court, Plaintiff argues that (1) Plaintiff has a severe impairment of left carpal and cubital tunnel syndrome (CTS); (2) the RFC fails to accommodate Plaintiff's asthma and COPD; (3) the RFC is not supported by substantial evidence; and (4) the ALJ improperly discounted Nurse Pinkerton's opinion. Plaintiff asks that the ALJ's decision be reversed and remanded for an award of benefits or further consideration. The Commissioner responds that (1) notwithstanding any later developments, the record before the ALJ lacked medical evidence of a hand impairment during the relevant period; (2) the ALJ properly considered the evidence regarding Plaintiff's asthma and COPD, and the RFC accommodates these conditions by limiting Plaintiff to sedentary work with specific restrictions; (3) substantial evidence supports the ALJ's assessment of Plaintiff's subjective complaints; and (4) the ALJ properly weighed the opinion evidence and was entitled to allocate credibility consistent with the overall record.

## DISCUSSION

**Statutory Framework**

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation

8

process to determine disability. The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If not, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments. A severe impairment is one which significantly limits a person's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c).

A special technique is used to determine the severity of mental disorders, which are not deemed disabling unless functional limitations known as "Paragraph B criteria" are present, meaning a claimant has one "extreme" or two "marked" functional limitations in her ability to: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(3). A "marked" limitation means a serious limitation in functioning independently, appropriately, effectively, and on a sustained basis in the given area. An "extreme" limitation means an inability to function independently, appropriately, effectively, and on a sustained basis in that area. When paragraph B criteria are not satisfied, the relevant listings also have additional functional criteria known as "paragraph C criteria," used to evaluate "serious and persistent" mental disorders. Paragraph C criteria require a medically documented history of the existence of the disorder for at least two years, with evidence of (1) medical treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and that diminishes the symptoms and signs of the claimant's disorder and (2) marginal adjustment, meaning a minimal capacity to adapt to changes in one's environment or to demands that are not already part of one's daily life.

If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is medically equal to one of the deemed-disabling impairments listed in the Commissioner's regulations.  If not, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work.  If the claimant cannot perform his past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors – age, education, and work experience.  *See, e.g., Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010).  When a claimant cannot perform the full range of work in a particular category of work (medium, light, and sedentary) listed in the regulations, the ALJ must produce testimony by a VE (or other similar evidence) to meet the step-five burden.  *See Baker v. Barnhart*, 457 F.3d 882, 894 (8th Cir. 2006).

**Standard of Review**

In reviewing the denial of Social Security disability benefits, a court must review the entire administrative record to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole.  *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011).  The court "may not reverse merely because substantial evidence would support a contrary outcome.  Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted).  A reviewing court "must consider evidence that both supports and detracts from the ALJ's decision.  If, after review, [the court finds] it possible to draw two inconsistent positions from the evidence

10

and one of those positions represents the Commissioner's findings, [the court] must affirm the decision of the Commissioner." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (citations omitted).  Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted).  A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance.  *Id.*  The Court "defer[s] heavily to the findings and conclusions of the Social Security Administration." *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015).

**Analysis**

Hand Impairment

First, Plaintiff contends that the ALJ overlooked the severity of his hand impairment from CTS.  Plaintiff notes that the medical evidence shows his complaints of hand numbness beginning in July 2018.  Tr. 454.  Plaintiff then points to additional evidence submitted to the Appeals Council containing records from October 2019 to May 2020.  In October 2019, Plaintiff presented to Mercy Urgent Care with complaints of hand numbness.  Tr. 52.  He was seen by a neurologist at Washington University later that month.  Tr. 82.  In November 2019, an examination revealed left distal median neuropathy consistent with CTS.  Tr. 92.  At the end of that month, he was referred for surgery on the left hand and an MRI for right hand numbness.  Tr. 19.  These bilateral conditions were evaluated again in March 2020, when severe CTS was noted on the left side.  Tr. 35.  In May 2020, his surgery was postponed due to the COVID-19 pandemic.

11

Tr. 42.

In her decision dated September 5, 2019, the ALJ concluded that the record did not evidence a severe hand impairment because Plaintiff's treatment notes to date at that time did not contain such a diagnosis, and tests showed normal blood flow, intact sensation, and symmetric strength. Tr. 112, 455, 465, 501, 504. As the Commissioner acknowledges, although later evidence may support a finding of impairment with a later onset date, the record before the ALJ at the time of her decision did not substantiate a medically determined hand impairment, much less a severe one, for the relevant period at issue here.

The Appeals Council only reviews additional evidence that is new, material, and related to the period on or before the date of the decision. 20 CFR § 404.970. Evidence is material when it relates to the relevant period, not to post-decision deterioration of a preexisting condition. *See e.g., Martin v. Astrue*, 4:10-CV-1507-JCH/FRB, 2011 WL 3352462, at *21 (E.D. Mo. July 15, 2011) (affirming a finding that claimant's back pain was not severe where the pre-decision record contained no medical indication of severity, but a post-decision MRI revealed stenosis and disc bulging; also affirming a finding that the claimant's anxiety was not severe where here treatment began after the decision date). Such is the case here. As the Appeals Counsel advised Plaintiff in its denial notice, the proper remedy is a new application. *Bergmann v. Apfel*, 207 F.3d 1065, 1070 (8th Cir. 2000).

RFC Limitation for COPD/Asthma

Second, Plaintiff asserts that the RFC lacks accommodations for Plaintiff's COPD

12

and asthma, which he testified caused shortness of breath and lightheadedness.  The ALJ identified these as severe impairments but found that Plaintiff's respiratory condition improved after he sought treatment in October 2018 and received medication and education.  Tr. 112, 115.  With this improvement, the ALJ reasoned, Plaintiff was able to perform activities consistent with the RFC for sedentary work with specific physical limitations.

Plaintiff argues, however, that the RFC fails to identify any environmental limitations recommended in Nurse Pinkerton's opinion (i.e., to avoid exposure to dust, smoke, chemicals, and fumes).  But the ALJ did not find Nurse Pinkerton's opinion persuasive, and nothing else in the record prescribes such limitations.  Plaintiff's treatment records merely indicate that his asthma is "moderate" and "improving with treatment" in the form of Symbicort and albuterol inhalers.   Tr. 549, 553, 557.  Based on this record, the Court cannot say that the ALJ committed reversible error by failing to tailor the RFC with the specific environmental limitations recommended by Nurse Pinkerton.

Moreover, even accepting Nurse Pinkerton's restrictions, the RFC as currently crafted is not necessarily inadequate.  The DOT listings cited by the VE using the RFC set forth in the decision (posed as a hypothetical) do not contain any Selected Characteristics of Occupations (SCOs) signaling respiratory irritants.[6]  In other words,

---

[6]     See DOT 249.587-018 (document preparer, microfilming); DOT 713.687-018 (optical goods final assembler); DOT 726.684-110 (touch-up screener, printed circuit board assembly).

13

the RFC already produces suitable occupations to accommodate Plaintiff's asthma.

### Sufficiency of Evidence

Third, Plaintiff asserts that the ALJ's determination of his RFC is not supported by substantial evidence. Specifically, Plaintiff argues that the agency opinion of Dr. Spence, dated July 11, 2018, indicating that Plaintiff could perform sedentary work with certain physical limitations,[7] does not account for subsequent medical evidence indicating that Plaintiff's heart condition did not improve. For example, on August 17, 2018, Nurse Winter at Washington University noted that Plaintiff's ejection fraction had declined. Tr. 466. On August 28, 2018, Plaintiff complained of nausea, shortness of breath, dizziness, and chest pressure. Tr. 467. On October 30, 2018, Plaintiff's complaints were the same. Tr. 473. On April 30, 2019, Plaintiff reported being inactive and breathless after mild activity. Tr. 477. On June 3, 2019, Plaintiff reported breathlessness and fatigue after exercise. Tr. 482.

Based on the foregoing, Plaintiff argues that the record does not support the ALJ's finding that his conditions had improved. The Court does not agree. These same treatment notes indicate that it was unclear whether Plaintiff's reported symptoms were related to his cardiac function, which had normalized, warranting a decrease in medication, or at least due in part to situational stressors. Tr. 473. In April 2019, with those stressors resolved, Plaintiff reported feeling better, taking less medication, and

---

For all three listings, the SCOs for atmospheric conditions and toxic chemicals indicate "condition does not exist."

[7]   Agency medical consultants are considered "highly qualified" and "experts in Social Security disability evaluation." 20 C.F.R. § 404.1513a.

wanting to exercise more. Tr. 477. He was assessed to be "doing well" and was encouraged to exercise. Tr. 479. In June 2019, Plaintiff's symptoms were stable (Tr. 482), his pacemaker was functioning well, and his atrial tachycardia was largely asymptomatic. Tr. 485. This record supports the ALJ's overall finding that Plaintiff's conditions had improved since the date of the agency doctor's review.

Plaintiff also asserts that the ALJ improperly relied on his daily activities as evidence refuting the severity of his conditions, contrary to Eighth Circuit precedent instructing that a claimant's daily activities do not constitute substantial evidence of his ability to work. *Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000). Specifically, the ALJ noted that Plaintiff had custody of his teenage daughter and could do housework, care for pets, grocery shop, ride a lawnmower, and endeavored to increase his exercise. While Plaintiff is correct that a person's ability to engage in chores or hobbies does not demonstrate an ability to work, it is proper for an ALJ to consider a claimant's personal activities for purposes of assessing the credibility of his claims of incapacity. *McDade v. Astrue*, 720 F.3d 994, 998 (8th Cir. 2013). This is what the ALJ did here in finding that Plaintiff's activities belied his subjective complaints as to the severity of his impairments. "Credibility determinations are the province of the ALJ." *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090 (8th Cir. 2018).[8]

Further, though Plaintiff centrally argues in this point that even minimal activity

---

8    Although SSR 16-3p, published March 28, 2016, eliminates the use of the term "credibility," expressly rescinding SSR 96-7p, Eighth Circuit precedent continues to employ the term to describe an assessment of whether the evidence supports a claimant's subjective complaints.

15

leaves him breathless and tired, the Court again notes that the RFC prescribes sedentary work with additional physical restrictions. The ALJ did not ignore Plaintiff's exertional limitations but rather accommodated them. The Court finds the RFC well within the available zone of choice.

Opinion Evidence

Fourth and finally, Plaintiff contends that the ALJ improperly discounted the opinion of Nurse Pinkerton without adequate justification. For claims filed on or after March 27, 2017, such as Plaintiff's, the regulations were amended to eliminate the treating physician rule. The new regulations provide that the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." Rather, the ALJ will consider all medical opinions according to several enumerated factors: supportability, consistency, relationship with the claimant (e.g., length, frequency, purpose, and extent of treatment), and specialization. 20 C.F.R. § 404.1520c. The most important factors are supportability and consistency. *Id*.

As previously stated, Nurse Pinkerton opined that Plaintiff would require 2-3 unscheduled breaks per day, would need to change positions at will, and would miss workdays unpredictably. Tr. 116, 563-64. The ALJ found this opinion insufficiently specific and thus unpersuasive, reasoning that it failed to indicate (1) the length or timing of breaks and thus whether normal allotted breaks would suffice, (2) the number of absences predicted per month, and (3) the reasons why Plaintiff would need to change positions at will. Tr. 116. Additionally, the ALJ found that Nurse Pinkerton's reference

16

to hand numbness was inconsistent with the record, which did not evidence a diagnosed hand impairment. Nurse Pinkerton also noted that Plaintiff had passed out once for unknown reasons, but the ALJ noted that the record did not indicate ongoing syncopal episodes. Lastly, the ALJ found the opinion inconsistent with evidence of improvements in Plaintiff's heart condition and with Plaintiff's daily activities. Tr. 117.

Plaintiff takes issue with the ALJ's characterization of Nurse Pinkerton's opinion as lacking in specifics or rationale, arguing that the form is complete and indicates symptoms consistent with the medical evidence (e.g., shortness of breath, fatigue, dizziness, nausea). Tr. 561. To a limited extent, Plaintiff's challenge is justified. Contrary to the ALJ's decision, Nurse Pinkerton did not actually opine that Plaintiff would be unable to perform full-time work. And the ALJ's criticism that the opinion failed to specify whether breaks could be taken during regular times ignores the wording of the questionnaire, which solicits *unscheduled* breaks. Tr. 563. The questionnaire does not elicit a rationale as to *why* Plaintiff must be able to shift positions, but Nurse Pinkerton did note that Plaintiff's hands get numb when he sits too long. Tr. 563. The ALJ also criticized the lack of specificity regarding absences, but the opinion explains that they would be difficult to predict. Overall, the form is sufficiently completed, with the checkmark and narrative answers solicited by the questionnaire and even additional unsolicited information in the margins. Thus, the Court does not share the ALJ's view that Nurse Pinkerton's opinion lacks adequate "specifics or rationale." The minor omissions cited by the ALJ do not justify a total disregard for the opinion.

Notwithstanding these details, however, the ALJ supplied other sound reasons for

17

giving the opinion minimal weight. As discussed above, the record before the ALJ did not evidence a diagnosed hand impairment during the relevant period. Thus, to the extent that Nurse Pinkerton's assessment of Plaintiff's limitations included some accommodation for hand impairments, such opinions are not supported by the record as it existed at that time. Additionally, though Plaintiff's single episode of syncope was cited multiple times on the form and described as "major concern," the ALJ did not find it as significant as the opinion suggests given the overall record showing improvements in Plaintiff's conditions with treatment. Lastly, the ALJ found the limitations in Nurse Pinkerton's opinion inconsistent with Plaintiff's daily activities. These are factual determinations within the ALJ's discretion based on inconsistencies that are borne out in the record.

Though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner. *Winn v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 982, 987 (8th Cir. 2018). While the Court must take into account "evidence that both supports and detracts from the ALJ's decision, as long as substantial evidence in the record supports the Commissioner's decision, [the Court] may not reverse it because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the Court] would have decided the case differently." *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015). When it is possible to draw different conclusions from the evidence and one represents the Commissioner's findings, this Court must affirm the decision. *Chaney*, 812 F.3d at 676.

18

## CONCLUSION

Upon review of the record, the Court cannot say that the ALJ's decision falls outside the available zone of choice.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**. A separate Judgment shall accompany this Memorandum and Order.

*Audrey G. Fleissig*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 1st day of February 2022.